IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON MOTION FOR REHEARING


 




NO. 3-91-390-CV






R COMMUNICATIONS, INC., f/k/a R N COMMUNICATIONS, INC.,



 APPELLANT


vs.





HONORABLE JOHN SHARP, COMPTROLLER OF PUBLIC ACCOUNTS OF


THE STATE OF TEXAS,



 APPELLEE




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT



NO. 91-4893, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING



 


 



 The prior opinion of this Court, dated August 26, 1992, is withdrawn and the
following is substituted therefor.

 R Communications, Inc. (the Corporation) sought review of a sales tax deficiency
assessed by the Comptroller of Public Accounts ("Comptroller") without first paying the taxes
allegedly owed. The Tax Code requires a taxpayer to make payment with a written protest before
filing suit to contest the legality or accuracy of taxes assessed. Tex. Tax Code Ann. § 112.051(a)
(Pamph. 1992). The district court of Travis County dismissed the suit for want of jurisdiction. 
 

 On appeal the Corporation argues that the district court had jurisdiction of the suit
under the Administrative Procedure and Texas Register Act. See Tex. Rev. Civ. Stat. Ann. art.
6252-13a, § 19 (Pamph. 1992) ("APTRA"). Alternatively, the Corporation contends that section
112.051 of the Tax Code is unconstitutional in that it imposes an impossible condition on an
insolvent taxpayer. The Corporation argues that the payment requirement offends equal protection
and due process guarantees under the federal constitution, and violates the state constitutional right
of open access to courts to pursue a remedy by due course of law. See U.S. Const. amends. V,
XIV; Tex. Const. art. I, § 13. We conclude that the Tax Code does not violate the open courts
provision of the state constitution. We reaffirm earlier holdings that the jurisdictional
requirements of the Tax Code in section 112.051 do not offend the taxpayer's other constitutional
rights and cannot be avoided by APTRA section 19. We also overrule the Corporation's
complaint that sections 112.101 and 112.108 of the Tax Code impose unconstitutional restrictions
on the taxpayer's right to seek injunctive relief and a declaratory judgment. The trial court
correctly determined that it had no jurisdiction over this cause and we affirm its order of
dismissal.



BACKGROUND


 R Communications sells, installs and repairs telephone systems. From 1980 to
1984, the invoices of the Corporation did not separate the cost of materials sold from the cost of
services rendered. The Corporation maintained records of what the charges were for and remitted
to the Comptroller taxes due on its sales but not on its service charges. In late 1984, the
Comptroller audited the company and assessed a deficiency of approximately $85,573.

 The Corporation's petition for a redetermination, see Tex. Tax Code Ann.
§ 111.009 (1982 & Pamph. 1992), began an administrative process that continued for six years. 
In January 1991, the administrative law judge's final decision affirmed the taxpayer's liability for
$128,575 in taxes and interest. After its motion for rehearing was overruled, the Corporation
filed suit on April 8, 1991, seeking judicial review under section 19 of APTRA and asking the
court to determine its tax liability under the Uniform Declaratory Judgments Act. See Tex. Civ.
Prac. & Rem. Code Ann. § 37.002(a) (1986 & Supp. 1992). The Corporation never paid the tax
deficiency. 

 The Comptroller filed pleas to the jurisdiction, noting the Corporation's failure to
pay the taxes assessed, see Tax Code § 112.051, and its failure to meet the prerequisites for
seeking injunctive relief in a tax-collection proceeding. See Tax Code § 112.101. The
Comptroller also cited the statutory prohibition against declaratory judgments in tax matters, see
§ 112.108, and denied that APTRA section 19 conferred jurisdiction on the court. The trial court
dismissed the cause on July 8, 1991. 

 In six points of error, the Corporation contends: (1) that the trial court had
jurisdiction to hear this appeal under APTRA section 19; (2) that the jurisdictional requirements
of Tax Code section 112.051 are unconstitutional; (3) that the prohibition against declaratory
judgments, Tax Code section 112.108, is unconstitutional; (4) that the prerequisites to seeking
injunctive relief, Tax Code section 112.101, are unconstitutional; (5) that governmental immunity
does not bar the Comptroller's liability for attorney's fees; and (6) that the court erred in
dismissing the taxpayer's "cross-action" against the City of Arlington and the State of Texas.



APTRA DOES NOT GRANT TAXPAYERS A RIGHT OF APPEAL


 In the first point of error, the Corporation complains of the trial court's failure to
find jurisdiction to entertain its petition for judicial review under APTRA section 19. Texas
courts have previously determined that APTRA section 19 does not confer a direct right of review
on taxpayers. In Robinson v. Bullock, 553 S.W.2d 196 (Tex. Civ. App. 1977, writ ref'd n.r.e.),
cert. denied, 436 U.S. 918 (1978), a taxpayer who failed to meet the taxation statute's
jurisdictional requirements for judicial review argued that APTRA section 19 conferred
jurisdiction on the court to hear its suit. The appellate court reasoned this could be true only if
APTRA implicitly repealed the substantive rights and procedural remedies granted under the tax
statutes, and noted that repeal by implication was disfavored. Id. at 198. Unless a new statute
specifically repeals an earlier statute, or is repugnant to it, the two acts should be construed in a
manner to allow both to stand. Id. Finding that APTRA did not specifically repeal the procedural
requirements for review under the tax statutes, the court detected



no real or substantial repugnancy between Article 1.05, which grants the taxpayer
a substantive right and a remedial mode of questioning the validity of a tax statute,
and the later general procedural route provided by Section 19 of Article 6252-13a
to effect appeal from an adverse ruling of a State agency.



Id. at 198. (1) Because APTRA does not repeal the jurisdictional requirements of the Tax Code,
APTRA does not create a right of review when a taxpayer has failed to satisfy those requirements. 
See also Bullock v. Adickes, 593 S.W.2d 805, 807-08 (Tex. Civ. App. 1980, writ ref'd n.r.e.);
Motorola, Inc. v. Bullock, 586 S.W.2d 706, 709 ( Tex. Civ. App. 1979, no writ). We
conclude that APTRA does not repeal the jurisdictional requirements of section 112.051 of the
Tax Code. Section 19 of APTRA, therefore, does not permit a taxpayer who fails to comply with
the jurisdictional requirements of the Tax Code to proceed with a petition for judicial review. We
overrule the first point of error.



CONSTITUTIONALITY OF SECTION 112.051


 In its second point of error, the Corporation insists that by requiring payment of
a deficiency assessment before filing suit, section 112.051 infringes on its constitutional rights. 
The Corporation argues that, for the insolvent taxpayer, payment presents an "impossible
condition" that forecloses the opportunity for a meaningful appeal. The Corporation claims that
section 112.051 unconstitutionally restricts its rights to due process and equal protection under
the federal constitution, and its right to equal protection and open access to courts under the Texas
Constitution. See U.S. Const. amend. XIV; Tex. Const. art. I, §§ 3, 13. 



Due Process. A long line of United States Supreme Court cases establishes that a taxation scheme
that provides for legal challenges only after taxes have been collected does not offend due process. 
"All governments, in all times, have found it necessary to adopt stringent measures for the
collection of taxes, and to be rigid in the enforcement of them." Cheatham v. United States, 92
U.S. 85, 88 (1876). The Court has upheld statutes that provide only "corrective justice," i.e. tax
refunds, as constitutional in recognition of the government's strong need to secure its revenues
promptly: 


 

[T]he government has the right to prescribe the conditions on which it will subject
itself to the judgment of the courts in the collection of its revenues. . . . If there
existed in the courts, State or National, any general power of impeding or
controlling the collection of taxes, or relieving the hardship incident to taxation,
the very existence of the government might be placed in the hands of a hostile
judiciary. While a free course of remonstrance and appeal is allowed within the
departments before the money is finally exacted, the general government has
wisely made the payment of the tax claimed, whether of customs or of internal
revenue, a condition precedent to a resort to the courts by the party against whom
the tax is assessed. 


Id. at 89; see also Rosewell v. LaSalle Nat.'l Bank, 450 U.S. 503 (1981) (tax scheme requiring
payment of property tax before seeking refund does not violate equal protection or due process
of law); Phillips v. Comm'r of Internal Revenue, 283 U.S. 589, 599 (1931) ("[I]t has already been
shown that the right of the United States to exact immediate payment and to relegate the taxpayer
to a suit for recovery is paramount."); Dodge v. Osborn, 240 U.S. 118 (1916) (proposition that
requiring payment before taxpayer can seek refund violates due process is entirely without merit);
State R.R. Tax Cases, 92 U.S. 575, 613-14 (1876). 

 As recently as 1990, the Supreme Court declared, "[I]t is well established that a
State need not provide predeprivation process for the exaction of taxes" to satisfy due process. 
McKesson v. Division of Alcoholic Beverages, 496 U.S. 18, 37 (1990).



Allowing taxpayers to litigate their tax liabilities prior to payment might threaten
a government's financial security, both by creating unpredictable interim revenue
shortfalls against which the State cannot easily prepare, and by making the ultimate
collection of validly imposed taxes more difficult.


Id. at 37. We reject the argument that section 112.051 of the Tax Code offends the Corporation's
due process rights under the federal constitution. 



Equal Protection. The Corporation next argues that section 112.051 offends the equal protection
guarantees of the federal constitution, but the Corporation offers no authority for this bald
assertion. Instead, the Corporation alleges in its brief that the tax scheme offends equal protection
under article 1, section 3 of the Texas constitution. (2) 

 Section 112.051 does not create any impermissible classifications; it treats all
taxpayers equally. The paramount purpose of securing the government's finances and promoting
efficient tax collection justifies the fact that unequal consequences might befall solvent and
insolvent taxpayers. (3) Under traditional equal protection analysis, a legislative classification that
does not affect a fundamental right or a suspect class need only be rationally related to a legitimate
state interest in order to be constitutionally valid. See Vance v. Bradley, 440 U.S. 93, 97 (1979);
Spring Branch Indep. Sch. Dist. v. Stamos, 695 S.W.2d 556, 559-60 (Tex. 1985) (applying
federal equal-protection analysis when reviewing claim brought pursuant to state constitution);
Calvert v. Zanes-Ewalt Warehouse, Inc., 492 S.W.2d 638 (Tex. Civ. App.), rev'd on other
grounds, 502 S.W.2d 689 (Tex. 1973), appeal dismissed, 416 U.S. 923 (1974) (classification in
tax statute must be reasonable, not arbitrary, and must be rationally related to legislative purpose). 
We hold that section 112.051 satisfies the rational relationship test and thus any resulting
classification does not offend the Corporation's equal protection rights under the state or federal
constitution. 



Open Courts. Finally, the Corporation argues that a tax scheme which makes payment of taxes
a prerequisite to judicial review violates article I, section 13 of the state constitution that
guarantees access to courts to seek redress by due course of law. (4) Although the federal
constitution has no parallel "open courts" provision, a majority of state constitutions include a
similar protection. See Lucas v. United States, 757 S.W.2d 687, 715 (Tex. 1988) (Phillips, C.J.,
dissenting). The open courts concept dates back to the Magna Carta: "To none will we sell, to
none deny, or delay right or justice." Magna Carta ch. 40, reprinted in W.McKechnie, Magna
Carta: A Commentary on the Great Charter of King John 459 (1905), cited in David Richards and
Chris Riley, Developing a Coherent Due-Course-of-Law Doctrine, 68 Tex. L. Rev. 1649, 1652
n.19 (1990). 

 The right to redress is a substantive right and the legislature is prohibited from
unreasonably interfering with access to the courts. Id. at 1652. Accord, Lucas, 757 S.W.2d at
715-716 (Texas places substantive restrictions on the legislature's authority to abolish or restrict
common-law causes of action.) (Phillips,C.J., dissenting); Lecroy v. Hanlon, 713 S.W.2d 335,
341 (Tex. 1986) (because a substantial right is involved, the legislature cannot arbitrarily or
unreasonably interfere with right of access to the courts); Nelson v. Krusen, 678 S.W.2d 918, 921
(Tex. 1984) (the guarantee of a remedy by due course of law is a substantial right).

 In Lucas, the supreme court determined that the legislature's attempt to cap civil
liability in medical malpractice suits ran afoul of the Texas open courts provision. 757 S.W.2d
at 690. The majority employed a test enunciated in Sax v. Votteler, 648 S.W.2d 661 (Tex. 1983),
to analyze the constitutionality of the limitation on liability: 



In analyzing the litigant's right to redress, we first note that the litigant has two
criteria to satisfy. First, it must be shown that the litigant has a cognizable
common law cause of action that is being restricted. Second, the litigant must
show that the restriction is unreasonable or arbitrary when balanced against the
purpose and basis of the statute.

 

Id. at 666; see also Lebohm v. City of Galveston, 275 S.W.2d 951, 953 (Tex. 1955) (legislature
may not arbitrarily abolish cause of action well defined in the common law). We apply the Sax test to determine if the Tax Code restrictions on judicial review violate the open courts provision
of the state constitution.

 First, an appellant must demonstrate that a common-law cause of action is being
restricted. The Corporation cannot pass this initial prong of the test. At English common law,
there was no right to sue the sovereign to protest revenue laws: 



The history of the English mode of dealing with public debtors and enforcing its
revenue laws is reviewed, with the result of showing that the rights of the Crown,
in these cases, had always been enforced by summary remedies, without the aid of
the usual course of judicial proceedings, though the latter were resorted to in the
Exchequer Court, when the officers of Government deemed it advisable. And it was
held that such a course was due process of law within the meaning of that phrase
as derived from our ancestors and found in our Constitution. 


Davidson v. New Orleans, 96 U.S. 97, 103 (1877) (emphasis added). Texas courts have held that
the right to challenge taxing authorities derives from statute and is not a cognizable common-law
cause of action protected by the open courts provision. In Filmstrips & Slides v. Dallas Central
Appraisal District., 806 S.W.2d 289 (Tex. App. 1991, no writ), a taxpayer challenged the
constitutionality of section 42.08 of the Tax Code that requires payment of property taxes before
the delinquency date or forfeiture of the right to appeal. The court applied the Sax test in
analyzing the constitutionality of the payment requirement and determined the restriction did not
offend the open courts provision. 



Filmstrips does not assert a cognizable common law cause of action against the
appraisal authorities. Instead, Filmstrips brought a statutorily devised action
designed to afford a dissatisfied taxpayer access to the courts. Hence, Filmstrips
failed to meet the first criterion [of the Sax test]. We conclude, therefore, that
Filmstrips has no right of redress under Article I, section 13 of the Texas
Constitution under the facts. We reach this conclusion because section 42.08 is not
unconstitutional under the open court's [sic] provision of Article I, section 13 of
the Texas Constitution to the extent that section 42.08 requires a forfeiture of a
property owner's right to pursue his legal remedy of appeal without an opportunity
to cure his delinquency prior to final hearing.

 

Id. at 291. In an earlier decision, this Court noted that no grounds existed at common law to sue
the State in revenue matters: "Since the Legislature by passage of Article 1.05 created a right not
existing at common law and prescribed a remedy to enforce the right, the courts may act only in
the manner provided by the statute which created the right." Bullock v. Electro-Science Investors,
Inc., 533 S.W.2d 892, 894-95 (Tex. Civ. App. 1976, no writ); see also Motorola, Inc., 586
S.W.2d at 709. 

 We conclude that the Corporation fails to satisfy the first prong of the Sax test;
therefore, the payment requirement of section 112.051 does not offend the open courts provision
of the Texas Constitution. Because section 112.051 of the Tax Code does not impermissibly
infringe upon the taxpayer's rights of due process, equal protection or open access to the courts,
we overrule the second point of error. 



PROHIBITIONS ON INJUNCTIVE AND DECLARATORY RELIEF


 In point of error four, the Corporation challenges the provision of the Tax Code
that requires either payment of the taxes due or the filing of a good and sufficient bond as a
condition precedent to injunctive relief. See § 112.101. (5) The Corporation alleges that the
conditions imposed for seeking injunctive relief offend the due process, equal protection and open
courts provisions of the state constitution and the fifth and fourteenth amendments to the federal
constitution.

 Point of error three attacks the constitutionality of section 112.108 of the Tax Code,
which bans any restraining order, injunction, declaratory judgment, writ of mandamus or writ of
prohibition relating to the assessment and collection of taxes, except on the conditions set forth
in the Tax Code. The Corporation suggests this prohibition of other actions offends due process. 
We will discuss points of error three and four together. 

 In challenging these two sections of the Tax Code, the Corporation has not
suggested that the process due under the state constitution exceeds the due process rights the
federal constitution guarantees. Rather, the Corporation argues that it is entitled to the equitable
remedies of injunctive and declaratory relief because it has no adequate legal remedy under the
circumstances. 

 The constitutionality of the federal anti-injunction statute in tax matters has been
upheld repeatedly. In Dodge v. Osborn, 240 U.S. 118 (1916), the Court held, "[I]t is no longer
open to question that a suit may not be brought to enjoin the assessment or collection of a tax
because of the alleged unconstitutionality of the statute imposing it." Id. at 121. Further, the
Court has determined that a post-deprivation judicial determination of rights is a constitutionally
adequate legal remedy that permits suspension of a taxpayer's right to injunctive relief. Phillips,
283 U.S. at 595-97. More recently, the Court pronounced a tax refund a sufficiently "plain,
speedy and efficient" legal remedy to permit the constitutional removal of a federal court's equity
jurisdiction to grant injunctions or declaratory judgments. California v. Grace Brethren Church,
457 U.S. 393, 417 (1982); see also Rosewell, 450 U.S. at 528.

 The Court's opinion in Bob Jones University v. Simon, 416 U.S. 725 (1974), is
particularly illustrative. Few taxpayers will be able to present a more compelling need for
injunctive and declaratory relief than did Bob Jones University at the time the Internal Revenue
Service revoked its section 501(c)(3) ruling letter and removed the University from the
Cumulative List of Tax-exempt Organizations. The University argued that revocation of its tax-exempt status would "chill" all charitable contributions during the pendency of its legal challenge
to the Service's actions unless it could obtain a stay. But the Supreme Court was unsympathetic,
pointing to longstanding congressional expressions prohibiting preenforcement relief in tax suits
dating back to 1867.



The court has interpreted the principal purpose of this language to be the protection
of the Government's need to assess and collect taxes as expeditiously as possible
with a minimum of preenforcement judicial interference, and to require that the
legal right to the disputed sums be determined in a suit for a refund.



Id. at 736-37 (citations omitted). Further the Court was disinclined to consider financial harm to
the taxpayer as a factor in its determination:



Although the Congressional restrictions to post-enforcement review may place an
organization claiming tax-exempt status in a precarious financial position, the
problems presented do not rise to the level of constitutional infirmities. . . .



Id. at 746. See also Enoch v. Williams Packing & Navigation, 370 U.S. 1, 6 (1962) (taxpayer
may not avoid anti-injunction statute "merely because collection would cause an irreparable injury,
such as the ruination of the taxpayer's enterprise."). We believe that these decisions preclude
special treatment of the insolvent taxpayer in our constitutional analysis. 

 The first Texas suspense statute requiring payment of taxes into a fund pending
litigation was held to be an adequate legal remedy sufficient to defeat a taxpayer's right to
injunctive relief from the collection of taxes. Rogers v. Daniel Oil & Royalty Co., 110 S.W.2d
891, 895-96 (Tex. 1937) (interpreting Art. 7057b, Vernon's Texas Civil Statutes 1936). See also
Bernard Hanyard Enters. v. McBeath, 663 S.W.2d 639, 643 (Tex. App. 1984, writ ref'd n.r.e.)
(purpose of similar provision, Tex.Tax.-Gen. Ann., art. 1.05, was to provide an adequate legal
remedy to prevent taxpayer from disrupting tax-collection process by seeking injunctive relief). 
Tax Code section 112.101 specifically requires the taxpayer to pay the taxes due or to file a good
and sufficient bond to secure their payment before seeking to enjoin their assessment or collection. 
Like Tax Code section 112.051, this section seeks to prevent premature judicial interference in
the administration of the state's tax system. For more than seventy-five years the United States
Supreme Court has overruled constitutional challenges to statutes barring pre-enforcement
injunctive relief in tax matters, see Dodge v. Osborn, 240 U.S. at 121, and we follow their lead
in upholding Tax Code section 112.101. 

 In Cobb v. Harrington, 190 S.W.2d 709, 713 (Tex. 1945), the supreme court held
that the existence of an adequate legal remedy does not necessarily defeat an action for declaratory
judgment. Nevertheless, Tax Code section 112.108 expressly prohibits declaratory judgments and
other equitable relief in cases challenging the applicability, amount assessed, collection or
constitutionality of a tax or fee. Given the "powerful governmental interest in protecting the
administration of the tax system from premature judicial interference," Bob Jones Univ., 416 U.S.
at 747, we are persuaded that declaratory judgments may interfere with the administration of a tax
system as surely as injunctive relief. See California v. Grace Brethren Church, 457 U.S. at 408-09 (holding that Tax Injunction Act prohibits federal declaratory as well as injunctive relief in
state tax matters). Because it serves the same purpose, the bar against declaratory relief for
taxpayers, like the anti-injunction statute, is not constitutionally infirm. See Bob Jones Univ. v.
Simon, 416 U.S. at 746 and California v. Grace Brethren Church, 457 U.S. at 408-09.

 Both state and federal precedent forecloses any argument that the Tax Code's
restrictions on equitable relief or declaratory judgments offend due process, even for an insolvent
taxpayer. No classification of taxpayers is imposed that denies equal protection. Further, the
statutory scheme is rationally related to the State's legitimate interest in securing its finances. 
Finally, these restrictions do not offend the open courts provisions of our state constitution
because no cause of action existed at common law to challenge the government's collection of its
revenues. We overrule the third and fourth points of error. 



FINAL POINTS OF ERROR


 In point of error five, the Corporation claims entitlement to attorney's fees under
the Declaratory Judgments Act. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (1986). 
Section 37.009 does authorize a court to award attorney's fees in suits brought under this act. 
Today, we have held that section 112.108 of the Tax Code is a valid bar to a suit for declaratory
judgment in this tax matter, removing any right to attorney's fees under that act. Further, this
Court has previously held that section 37.009 does not waive the State's immunity from liability
for attorney's fees. Texas Dep't of Human Servs. v. Methodist Retirement Servs., Inc., 763
S.W.2d 613, 614; Texas Employment Comm'n v. Camarena, 710 S.W.2d 665, 671 (Tex. App.
1986), rev'd on other grounds, 754 S.W.2d 149 (Tex. 1988). The Corporation has cited no
authority suggesting why governmental immunity, here asserted as an affirmative defense, would
not bar any liability that the Comptroller might have for attorney's fees. See Bullock v. Regular
Veterans Ass'n, Post 76, 806 S.W.2d 311, 315 (Tex. App. 1991, no writ). Thus two independent
reasons exist to bar the Corporation's recovery of attorney's fees: (1) our conclusion that section
112.108 of the Tax Code bars a declaratory judgment in this tax matter, and (2) our recognition
that the State's affirmative defense of governmental immunity defeats a recovery of attorney's fees
in a suit brought under section 37.009 of the Declaratory Judgments Act. We overrule the fifth
point of error.

 Finally, the Corporation complains that the trial court retained jurisdiction of its
"cross-claim" against the alleged "intervenors," the City of Arlington and the State of Texas. We
disagree with the Corporation's attempt to characterize these parties as intervenors, see Tax Code
§ 111.010(a) (requiring tax collection suits to be brought in the name of the State), and we
disagree that any action taken by the State could confer jurisdiction on the trial court to review
the Comptroller's administrative decision when the Corporation failed to satisfy the jurisdictional
requirements of section 112.051. We overrule the sixth point of error.



CONCLUSION


 Because we find no constitutional infirmity in the challenged provisions of the Tax
Code, and no other error on the part of the trial court, we affirm the order of dismissal.



 

 Bea Ann Smith, Justice

[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Affirmed

Filed: September 23, 1992

[Publish]

1. Article 1.05 is the predecessor statute to Tax Code § 112.051. See 1981 Tex. Gen. Laws,
ch. 389, § 1, at 1512. 
2. "All free men, when they form a social compact, have equal rights, and no man, or set of
men, is entitled to exclusive separate public employment, or privileges, but in consideration of
public services." Tex. Const. at. I, § 3.
3.   Section 111.102 of the Tax Code authorizes the comptroller to settle a claim for taxes if:


* * * 


(2) collection of the amount of tax due would make the taxpayer insolvent and
the taxpayer has submitted to the comptroller all financial records, including
income tax reports and an inventory of all property owned wherever located;
or


(3) the taxpayer is insolvent, is in liquidation, or has ceased to do business and:


 (A) the taxpayer has no property that may be seized by the courts of this
or another state; or


 (B) the value of the taxpayer's property is less than the amount of the tax
due and the amounts of debts against the property.


Tex. Tax Code Ann. § 111.102 (1982). 
4. "All courts shall be open, and every person for an injury done him in his lands, goods,
person or property shall have remedy by due process of law." Tex. Const. art. I, § 13.
5. Section 112.101 provides in relevant part that


(a) An action for a restraining order or injunction that prohibits the assessment or
collection of a tax or fee imposed by this title or collected by the comptroller
under any law, including a local tax collected by the comptroller, or a
statutory penalty assessed for the failure to pay the tax or fee may not be
brought against the public official charged with the duty of collecting the tax
or fee . . . unless the applicant for the order or injunction has first:


 * * *


 (2) either:


 (A) paid to the public official who collects the tax or fee all taxes, fees,
and penalties then due by the applicant to the state; or


 (B) filed with the public official who collects the tax or fee a good and
sufficient bond to guarantee the payment of the taxes, fees, and
penalties in an amount equal to twice the amount of the taxes, fees,
and penalties then due. . . .